## S94A0512. CHAPEL v. THE STATE.
(443 SE2d 271)

Sears-Collins, Justice.

Michael Chapel, a former Gwinnett County police officer, has been indicted for murder, felony murder, armed robbery, and possession of a firearm during the commission of a crime in connection with the death of Emogene Thompson. On the day of his arrest, April 24, 1993, Chapel's family retained attorney Walt M. Britt to represent Chapel. On September 22, 1993, Britt filed a motion on Chapel's behalf for court-appointed counsel, contending that Chapel is indigent and unable to fund his defense. After a hearing, the trial court appointed Britt to represent Chapel as an indigent defendant on September 29, 1993. Chapel was indicted on October 5, 1993, and on that same day the Gwinnett County Police Department informed Chapel that his employment was being terminated. Britt also represented Chapel in contesting the termination action. The prosecutor did not object at the time of Britt's appointment, but later both the district attorney, on behalf of the state, and the county board of commissioners filed motions to disqualify Britt in the criminal action, contending that his representation of Chapel created a conflict of interest because of Britt's past and present representation of the county in other matters.

In granting the motions to disqualify Britt, the trial court found that

> [a]ll of the movants acknowledge that during the course of the termination proceedings, the defendant will be afforded the right to subpoena witnesses on his behalf, including the persons who may testify as State's witnesses in the trial of the [criminal] case. Defense counsel has announced his intent to compel the testimony of those witnesses, for the purpose of discovery, prior to the trial of the indicted offenses.
>
> [Britt] is in private practice, which includes representation of Gwinnett County and its appointed and elected officials in numerous cases, both pending and disposed.
>
> During the course of his employment as a part-time county attorney, Mr. Britt has been given access and information as to the county's practices, policies, procedures, reporting requirements, and existing problems [and] has also been given access to personnel files of potential State's witnesses in the [criminal] case. Mr. Britt has stated his inten-

tion to use that information and those files to cross-examine and attack adverse witnesses at the trial of this case and at the termination hearings.

The trial court concluded that Britt represented conflicting interests by virtue of his representation of the county and of Chapel, and on November 24, 1993, disqualified Britt from acting as counsel for Chapel. The trial court's decision is now before this court on interlocutory appeal. We affirm.

1. As there is no lower court decision regarding whether Britt is qualified to represent Chapel in the termination action before the court at this time, we do not address that issue.

2. Although he was initially retained, at the time of his disqualification, Britt represented Chapel as court-appointed counsel for an indigent defendant. In *Davis v. State*, 261 Ga. 221 (403 SE2d 800) (1991), this court held that

> [a]n indigent defendant has no right to compel the trial court to appoint an attorney of his own choosing. . . . The choice of appointed counsel is a matter governed by the trial court's sound exercise of discretion and will not be disturbed on appeal unless [that discretion is] abused.

Id. at 222. *Davis* establishes a test for determining whether a trial court abuses its discretion in refusing to appoint an indigent defendant's chosen counsel:

> when a defendant's choice of counsel is supported by objective considerations favoring the appointment of the preferred counsel, and there are no countervailing considerations of comparable weight, it is an abuse of discretion to deny the defendant's request to appoint the counsel of his preference.

Id. As the effect of disqualifying Britt is that Chapel's chosen counsel was not appointed, the test set forth in *Davis* applies to the circumstances of this case.

3. (a) Chapel contends the following objective considerations support Britt's appointment as counsel: Britt represented Chapel as retained counsel for about five months before being appointed, during which time he "pursued an aggressive motions practice"; during his representation of Chapel, both as retained and appointed counsel, Britt and Chapel developed a relationship of trust and confidence essential to effective criminal representation; a death penalty case requires special skill and knowledge and Britt is one of only nine attorneys in Gwinnett County both qualified and willing to accept appointed death penalty cases; and, Britt "has foregone further lucra-

tive employment with Gwinnett County in order to defend the accused."

(b) Counterbalancing these concerns is the conflict of interest found by the trial court to arise from Britt's past and ongoing representation of the county in other matters. Chapel contends that no conflict of interest exists because the interests of Chapel are not contrary to the interests of the county, and the files of county personnel and potential state witnesses in Britt's possession would be available to any defense attorney through discovery. Based on the particular facts and circumstances of this case, we agree with the trial court's finding that a conflict of interest exists.

" 'Counties are subdivisions of the State government to which the State parcels its duty of governing the people.' " (Citations omitted.) *Troup County EMC v. Ga. Power Co.*, 229 Ga. 348, 352 (191 SE2d 33) (1972). Britt's use of the knowledge and information in his possession regarding potential state witnesses in Chapel's criminal prosecution to discredit those witnesses would be contrary to the interests of the state and, therefore, the county, thus creating a conflict between the interests of Chapel and the interests of the county. This conflict of interest is not ameliorated by the availability of discovery. It is not certain that another attorney would be able to obtain the information in Britt's possession from the county through discovery. Indeed, even if some files or other documentary information were available, that availability would not bring an attorney with no previous connection with the county up to par with Britt, who, by virtue of his representation of the county, would have gained a special insight and understanding of the county and county personnel not necessarily found in documents and not susceptible to discovery.

In addition, in *Crawford W. Long Mem. Hosp. v. Yerby*, 258 Ga. 720 (373 SE2d 749) (1988), this court held that representation of a client against a former client in an action involving the same subject matter as did the representation of the former client "creates an impermissible appearance of impropriety . . . [and is] prohibited by the Canons of Ethics." Id. at 722. It is undisputed that Britt represented the county during the time Chapel worked for the county, and at the time the victim was killed. While Britt's representation of the county apparently was limited to civil matters, the fact that Britt intends to use information obtained during that representation against the interests of the county in his representation of Chapel brings this case squarely within the ambit of *Yerby*'s description of an "impermissible appearance of impropriety."

(c) In order to reach a decision in this case, we must weigh the objective considerations supporting Chapel's choice of counsel against the countervailing considerations described above. See *Davis*, supra.

The amount of time and effort expended by an attorney on be-

half of a criminal defendant are weighty considerations in determining whether that attorney should be appointed to represent the defendant. In this case, however, Britt represented Chapel for only seven months before being disqualified. Chapel was indicted for less than two months of that time, and has yet to be arraigned. Since Britt's disqualification, the only issue dealt with has been whether that disqualification was proper. Though Chapel points out that during his seven months as Chapel's counsel Britt "pursued an aggressive motions practice," Chapel has not shown that the case is so legally or factually complex that another attorney qualified to handle death penalty cases would be unable to effectively represent Chapel.[1]

On the other hand, both the conflict of interest and the appearance of impropriety presented by the circumstances of Britt's past and present representation of the county and his present representation of Chapel render Britt's representation of Chapel impermissible. See *Yerby*, supra; see also *Mitchell v. State*, 261 Ga. 347, 349-350 (405 SE2d 38) (1991). Furthermore, this court has held that when faced with a "serious potential for a post-trial claim of ineffectiveness" a trial court properly refused to allow the defendant to be represented by counsel of his choice. *Lynd v. State*, 262 Ga. 58, 63 (414 SE2d 5) (1992). In this case, Britt's representation of Chapel and the county creates a "serious potential for a post-trial claim of ineffectiveness" based on the possibility that Britt's loyalty to or efforts on behalf of Chapel could be threatened by his responsibilities to the county.

4. For the above reasons, we find that the considerations supporting the appointment of Chapel's choice of counsel are outweighed by countervailing considerations, and we affirm the trial court.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 16, 1994 —
RECONSIDERATION DENIED JUNE 10, 1994.

*Chandler & Britt, Walter M. Britt, Gregory D. Jay,* for appellant.

*Daniel J. Porter, District Attorney, Thomas N. Davis, Jr., Donald L. Johnston, Assistant District Attorneys, Michael J. Bowers, Attorney General, Ann F. Sheldon, John E. Underwood, Caryl B.*

---

[1] To the contrary, in *Davis* the defendant had been convicted and sentenced to death in 1974. His sentence was vacated by the U. S. Supreme Court in 1976. Later, he was retried and given the death sentence again. That sentence was vacated in federal habeas corpus proceedings in 1983. In all proceedings since 1977, Davis's preferred counsel had represented him without compensation, and the case was set for a third sentencing trial. *Davis v. State*, 261 Ga. at 221-222.